UNITED STATES of America, Appellee,

v.

Charles W. CAVENDER, Appellant.

No. 77–1094.

United States Court of Appeals,
Fourth Circuit.

Argued Nov. 11, 1977.

Decided June 7, 1978.

Dwane H. Miller, Richmond, Va., for appellant.

A. George Lowe, Special Asst. U. S. Atty., Baltimore, Md. (Robert B. King, U. S. Atty., E. Leslie Hoffman, III, Asst. U. S. Atty., Charleston, W. Va., and S. Benjamin Bryant, Third Year Law Student on brief), for appellee.

Before WINTER, RUSSELL and WIDENER, Circuit Judges.

DONALD RUSSELL, Circuit Judge:

The defendant-appellant was indicted for possession of an unregistered firearm in violation of § 5861(c), (f), (i), 26 U.S.C. After arraignment and the entry of a plea of not guilty, he moved the District Court for an order protecting him from cross-examination at trial with reference to any criminal convictions more than ten years old, pursuant to Rule 609(b), Federal Rules of Evidence. The motion was overruled.

He renewed his motion at the conclusion of the Government's evidence at trial; the District Court again denied it. In this posture of the case, the defendant chose not to testify. Following submission of the cause to the jury, a verdict of guilty was returned. The defendant appeals, claiming error in the denial of his motions to bar his criminal convictions which were more than ten years old.

We reverse and remand for a new trial.

▆▆▆ Whether the District Court committed error in denying appellant's motions turns on the proper application of subdivision (b), Rule 609, Federal Rules of Evidence.[1] That subdivision forbids the use of any criminal conviction more than ten years old for purpose of impeaching the credibility of a defendant "unless the court determines, in the interests of justice, that the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect."[2] The Senate Report on this subdivision made it crystalline that the District Court was only to depart from the prohibition against the use for impeachment purposes of convictions more than ten years old "very rarely and only in exceptional circumstances." It went further and marked out the strict limits within which the District Court must act if it exercises a discretion to permit the use of such convictions for impeachment, i. e., it must determine that the probative value of the conviction, "*supported by specific facts and circumstances * * * substantially* outweighs its prejudicial impact" (emphasis added).[3] It is significant that the Rule prescribes not simply a determination or finding by the District Court but one supported by "*specific*," i. e., articulated, facts. And the burden of establishing such "specific facts and circumstances" supportive of the District Court's determination is imposed on the Government.[4] Nor is it improper for the defendant, in order to determine his course at trial, to move in advance of trial, as did the appellant, for a ruling by the District Court on the admissibility of any conviction more than ten years old, which the Government might intend to offer for purposes of impeaching the defendant's credibility.[5]

1. The legislative history of the Rule is covered in Savikas, *New Concepts in Impeachment: Rule 609(a), Federal Rules of Evidence*, 57 Chicago Bar Record 76 at 77–8 and *United States v. Ortiz* (2d Cir. 1977) 553 F.2d 782 at 785–6 (Mansfield, J., dissenting).

2. The full language of 609(b) is:
   "(b) Time limit—Evidence of a conviction under this rule is not admissible if a period of more than ten years has elapsed since the date of the conviction or of the release of the witness from the confinement imposed for that conviction, whichever is the later date, unless the court determines, in the interests of justice, that the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect. However, evidence of a conviction more than 10 years old as calculated herein, is not admissible unless the proponent gives to the adverse party sufficient advance written notice of intent to use such evidence to provide the adverse party with a fair opportunity to contest the use of such evidence."

3. The language of the Senate Report in connection with the subdivision is as follows:
   "It is intended that convictions over 10 years old will be admitted very rarely and only in exceptional circumstances. The rules provide that the decision be supported by specific facts and circumstances thus requiring the court to make specific findings on the record as to the particular facts and circumstances it has considered in determining that the probative value of the conviction substantially outweighs its prejudicial impact. It is expected that, in fairness, the court will give the party against whom the conviction is introduced a full and adequate opportunity to contest its admission." U.S.Code Cong. & Admin.News, 93d Cong., 2d Sess. 1974, pp. 7051, 7062.

4. *United States v. Hayes* (2d Cir. 1977) 553 F.2d 824, 828; *United States v. Smith* (1976) 179 U.S.App.D.C. 162, 173–74, 551 F.2d 348, 359–60; *United States v. Mahone* (7th Cir. 1976) 537 F.2d 922, 929, *cert. denied* 429 U.S. 1025, 97 S.Ct. 646, 50 L.Ed.2d 627; Savikas, *supra*, at 77.

5. *See United States v. Wolf* (10th Cir. 1977) 561 F.2d 1376, 1381; *United States v. Jackson* (E.D. N.Y.1975) 405 F.Supp. 938, 942; *cf. however, United States v. Johnston* (8th Cir. 1976) 543 F.2d 55, 59.
   In 3 Weinstein-Berger, Evidence Rules, at 609–79 (1977), the authors state:
   "Generally the question of which convictions will be usable to attack credibility

■ There were four convictions of the appellant found by the District Court admissible at trial, in the exercise of its discretion under 609(b). The first of these convictions was sodomy and was twenty-five years old; the second, twenty-one years old, was for probation violation; the third, fifteen years old, was for forgery, and the final one, seven years old, involved the interstate transportation of a stolen motor vehicle. In finding such convictions admissible, the District Court made no express finding that the probative value of any of the convictions [6] "substantially" outweighed their prejudicial impact nor did it state any "specific facts and circumstances" in support of any such finding; it simply denied the motions. And it denied the motions without any information about the convictions beyond their mere identification and without any real argument on the impeachment value of the several crimes held admissible or of the facts involved in the crimes.

Despite the language of the Rule requiring a finding based on "specific facts and circumstances" as a predicate for admitting the three convictions more than ten years old, it is the position of the Government on this appeal that the District Court, in the exercise of its discretionary power under

609(b) is not required to make any express or "specific" findings and that it is perfectly permissible under the Rule for the Court simply to rule as did the District Court here that the motion to exclude is denied.[7] We do not agree.

■ The Rule is plain and unambiguous in our opinion. It obligates the District Court, as we read it, to make a finding and that finding must be, not, as in subdivision (a)(1) of the Rule, a mere finding that probative value outweighs its prejudicial effect, but that the probative value of the conviction "substantially" outweighs its prejudicial effect. Moreover, since the power is to be exercised only in the "rare" and "exceptional" case,[8] the District Court is required under the Rule to support its finding with "specific facts and circumstances." This requirement of a finding supported by "specific facts and circumstances" is, as we see it, entirely inconsistent with the Government's argument that such requirement may be satisfied simply by the bare ruling on the part of the District Court that the conviction is admissible. That argument might be made in connection with 609(a), which includes no requirement of supporting reasons for the District Court's determination but it cannot be ad-

---

should be determined prior to trial. Counsel need to know what the ruling will be on this important matter so that they can make appropriate tactical decisions. For example, the opening of defense counsel or the decision of the defendant to take the stand may be affected."

There is some contrariety in the state decisions on whether such motion should be made before trial or after the prosecution concludes its presentation. For the view that a pretrial motion is proper, see *People v. Sandoval* (1974) 34 N.Y.2d 371, 357 N.Y.S.2d 849, 314 N.E.2d 413, 415, noted and discussed in 41 *Brooklyn L.Rev.* at 671-2 (1975). In *People v. Delgado* (1973) 32 Cal.App.3d 242, 108 Cal.Rptr. 399, 407, commented on in 9 *U. of San Francisco L.Rev.* at 503-4 (1975), on the other hand, the Court felt the motion should be made at the conclusion of the State's case.

All authorities seem to agree that, in any event, the motion must be made before the defendant testifies. *United States v. Scarpellino* (8th Cir. 1970) 431 F.2d 475, 480 (Bright, J. concurring).

**6.** Under the Rule, each conviction is to be considered separately; nor is the time limit on a conviction enlarged by any subsequent conviction. *See*, Rothstein, *The Proposed* Amendments to the Federal Rules of Evidence, 62 *Geo.L.Rev.* 125, 144-5.

**7.** It is inferable that, by simply denying the motion, the District Court could have assumed that the defendant as the proponent of the motion, had the burden. *United States v. Ortiz* (2d Cir. 1977) 553 F.2d 782, 785 (Mansfield, J., dissenting). Such an assumption would have been erroneous. For purposes of this opinion, however, we will presume that the District Court acted on the basis that the Government had the burden, even though the indications may be to the contrary.

**8.** No doubt because of the cautionary language of the Senate Report, Weinstein and Berger describe the District Court's discretionary balancing power as one to be exercised "in a very limited way." *See*, 609-80.4, 3 Weinstein & Berger, Rules (1977 ed.).

vanced under 609(b). The Senate Report which recommended the relevant language of 609(b) stated in explanation of the language of the subdivision unequivocally that the decision to admit a conviction more than ten years old had to "be supported by specific facts and circumstances thus requiring the court to make specific findings on the record as to the particular facts and circumstances it has considered in determining that the probative value of the conviction substantially outweighs its prejudicial impact." U.S.Code Cong. & Admin.News, 93d Cong., 2d Sess. at p. 7062 (1974).[9] Accordingly, Congress in giving the District Court a narrow and limited discretion under its formulation of 609(b) to admit a conviction more than ten years old for purposes of impeachment, hedged the exercise of that discretion about by a clearly defined constraint capable of being satisfied only by a specific finding resting on "specific facts and circumstances." This conclusion follows, also, from the Government's own admission that the District Court's decision to admit such conviction is subject to appellate review for abuse.[10] It is axiomatic that in the absence of any findings by the District Court and any articulation of the "specific facts and circumstances" supporting its decision, there can be no meaningful appellate

review of that decision.[11] As we have suggested in a number of decisions, appellate review in such circumstances would be a "meaningless gesture," an empty formality, and a "game of blindman's buff." *Appalachian Power Co. v. Environmental Pro. Agcy.* (4th Cir. 1973) 477 F.2d 495, 507, with cases cited, *modified on other grounds Union Electric Co. v. Environmental Protection Agency*, 427 U.S. 246, 254, 96 S.Ct. 2518, 49 L.Ed.2d 474; *see, also*, the cases discussed in Davis, *Administrative Law Treatise*, 1970 supp., § 1612. We conclude that 609(b) requires the District Court, if it concludes to admit thereunder a conviction more than ten years old, to find that the probative value of such conviction "substantially outweighs" its prejudicial impact and to support that finding with an identification of the "specific facts and circumstances" which support its decision.[12]

It may be that no appellate court has given to the Rule the precise construction in this regard which we have. In fact, two recent cases may appear superficially inconsistent with such view. *United States v. Mahone*,[13] and *United States v. Cohen*.[14] In *Mahone*, the District Court, unlike the District Court here, did, however, hear argument "regarding the nature of the prior

9. The procedural provisions of 609(b) are the converse of those in 609(a)(1). Under 609(a)(1), the felony conviction is *admissible unless* the District Court finds its prejudicial effect outweighs its probative value, whereas under 609(b) the conviction more than ten years old is *inadmissible unless* the District Court finds that the probative value of the conviction, "supported by specific facts and circumstances," "substantially outweighs" its prejudicial effect.

It will be noted that the determination on probative value under 609(b), unlike that under 609(a), is to be "supported by specific facts and circumstances," and on the basis of such facts the probative value of the conviction must not simply outweigh as in 609(a) but must "substantially outweigh," its prejudicial impact.

10. *See, United States v. Cohen* (5th Cir. 1977) 544 F.2d 781, 785, *cert. denied* 431 U.S. 914, 97 S.Ct. 2175, 53 L.Ed.2d 224; *United States v. Ortiz, supra*, 553 F.2d at 784.

11. *Cf. United States v. Mahone, supra*, 537 F.2d at 929, the Court said that when "such an explicit finding [of the facts and circumstances

supporting the determination to admit] is made, the appellate court easily will be able to determine whether the judge followed the strictures of Rule 609 in reaching his decision." For further discussion of *Mahone, see infra*.

12. The concurring opinion finds objectionable this "balancing" process. Balancing, however, is the common tool used in judicial decisions, whether under the common law, in resolving constitutional rights or in ruling, as here, on admissibility of evidence. Whether a confession is to be admitted, (*United States v. Lewis* (4th Cir. 1975) 528 F.2d 312) identification evidence permitted, (*Stanley v. Cox* (4th Cir. 1973) 486 F.2d 48) or delay in prosecuting defendant, (*Barker v. Wingo* (1972) 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101) are all issues resolved by balancing policy or evidential factors. There is nothing unorthodox in the use of such process in this connection.

13. *Supra*, 537 F.2d at 929-9.

14. *Supra*, 544 F.2d at 785-6.

conviction" and did make an express finding that the probative value of the conviction outweighed its prejudicial effect " 'on the basis of the record now before it.' " [15] The Circuit Court concluded that the District Court's declaration that its finding was based on "the record" represented an implicit indication that the Court had "weighed the prejudicial effect against the probative value of the evidence." It did proceed, though, to urge prospectively that trial judges make explicit Rule 609 findings on the record. In *Cohen*, the Court "found that trial court did not abuse its discretion in admitting the prior [state] conviction where it made a thorough and thoughtful analysis of the pertinent factors though it did not explicitly make findings which appellate court suggests should be done pursuant to Rule 609(b)." [16] The Court did add, however, that "Rule 609(b) may envision a more explicit proceeding with full findings setting forth the quality and nature of any possible prejudice to the defendant," [544 F.2d 786] and it had earlier stated that, "[t]he Rule requires a finding of specific facts and circumstances that prejudicial effect will be outweighed by probative value." [544 F.2d at 785] [17]

As we have already stated, we are convinced that the Rule *did* envision "explicit proceeding with full findings" to which *Cohen* adverted as a basis for the District Court's exercise of discretion under 609(b). And we think that *United States v. Smith, supra,* which is the most complete exposition of the Rule to date, points rather clearly in the direction we have taken in our construction of 609(b) and would seemingly find that the positive commands of the Rule were to be observed as written. [18] Similarly, *United States v. Townsend* (7th Cir. 1977) 555 F.2d 152, 159, suggests the same construction of the Rule. There, the Court, though it was dealing with a trial antedating the effective date of 609(b), found that the District Court had intended to abide with the Rule and that, in his comments to counsel in ruling on the issue, "adequately indicated why he thought 'the probative value of the conviction[s] supported by specific facts and circumstances substantially outweighs  *  *  *  [this] prejudicial effect,' *as required by the new Rule.*" (Italics added.) Finally, Judge Weinstein in his text on the Rules takes this same view. He states:

"[T]rial judges should make their determination after a hearing on the record *   *, at which the pertinent factors are explicitly identified and weighed." 3 Weinstein & Berger, Rules, at 609–79 (1977 ed.).

■ Even if it be assumed that the District Court was not obligated under the Rule to make an express finding based on

---

**15.** The concurring opinion would find prejudice to the defendant if the trial court is to inquire into the nature of the crime sought to be introduced for purposes of impeachment. It assumes that all the details of the old crime will be set forth before the jury. The assumption is incorrect. The admissibility of evidence *is* solely for the court. Accordingly, the evidence of the old crime, if considered, is considered only by the court and not by the jury.

**16.** This summary of the Court's holding is taken from Weinstein & Berger, *Commentary on Rules of Evidence for the United States Courts & Magistrates,* § 609–80–5, note 2 (1977 ed.).

**17.** It is of interest that the Court, in its statement, does not use the Rule's language which requires that the probative value must "substantially outweigh" the prejudicial effect.

**18.** *See* 179 U.S.App.D.C. at 171, 551 F.2d at 357, note 17:

"Since we are persuaded that the District Court did not operate within the proper framework in evaluating the admissibility of Gartrell's prior conviction, we need not assess the independent significance of the lack of an *explicit* finding that probative value outweighs prejudicial effect to the defendant. In particular, we need not decide whether the lack of such a finding inevitably implies a failure *to* exercise meaningfully the discretion conferred upon the trial court by Rule 609. Likewise we do not reach the question of whether a trial judge must provide an on-the-record explanation of his Rule 609 findings. However, it must be obvious to any careful trial judge that an explicit finding in the terms of the Rule can be of great utility, if indeed not required, on appellate review, *see Dorszynski v. United States,* 418 U.S. 424, 94 S.Ct. 3042, 41 L.Ed.2d 855 (1974), and some indication of the reasons for the finding can be very helpful."

"specific facts and circumstances" as authority for admitting a conviction more than ten years old, it would seem difficult, if not impossible, in any event for a court to find on a bare record such as that here that the probative value of a twenty-five year old sodomy conviction on a party's credibility "*substantially*" outweighed its prejudicial impact. Under the Rule, the pivotal issue of the probative value of a conviction turns largely on a consideration of the nature of the conviction itself. This follows because the purpose of impeachment is not "to show that the accused who takes the stand is a 'bad' person but rather to show background facts which bear directly on whether jurors ought to believe him * *." *Gordon v. United States* (1967) 127 U.S. App.D.C. 343, 347, 383 F.2d 936, 940, *cert. denied* 390 U.S. 1029, 88 S.Ct. 1421, 20 L.Ed. 2d 287. Accordingly, in general it is a conviction which bears on "whether jurors ought to believe" the witness or party that qualifies for impeachment purposes.[19] The crimes which are generally spoken of as meeting this test of giving a basis for an inference of a "propensity to lie" and which "bear directly on whether jurors ought to believe him" are those which "rest on dishonest conduct," *Gordon v. United States, supra,* or carry "a tinge of falsification," *United States v. Ortega* (9th Cir. 1977) 561 F.2d 803, 806, or involve " 'some element of deceit, untruthfulness, or falsification,' " *United States v. Thompson* (9th Cir. 1977) 559 F.2d 552, 554.[20] See, also, *United States v. Cox* (5th Cir. 1976) 536 F.2d 65, 71; *United States v. Bastone* (7th Cir. 1975) 526 F.2d 971, 982-3, *cert. denied* 425 U.S. 973,

96 S.Ct. 2172, 48 L.Ed.2d 797; Note, *California's Use of Prior Convictions to Impeach a Criminal Defendant,* 9 *U. of San Francisco L.Rev.* 491, 505 (1975); Krauser, *The Use of Prior Convictions as Credibility Evidence: A Proposal for Pennsylvania,* 49 *Temple L.Q.* 291, 302 (1973). The prejudicial effect arising out of the admission of the sodomy conviction against the defendant in this case was obviously substantial and the Government in its brief in this Court so concedes. Without more in this record, we would conclude that the ruling that the conviction of sodomy was permissible under Rule 609(b) was a manifest abuse of discretion and would require a reversal, unless it can be said such error was harmless.[21]

■ In determining whether the error in ruling that the sodomy conviction was usable in cross-examination of the appellant under 609(b) was harmless, we are left with the same problem faced by the Court in *United States v. Smith, supra,* 179 U.S.App. D.C. at 180, 551 F.2d at 366, *i. e.,* the standard of harmlessness to be applied. The Government's case here was purely circumstantial. The defendant's connection with such circumstances was the critical issue of the case. Only the appellant was in a position to offer any explanation with reference to those circumstances which might be helpful to the appellant. When the prosecution rests on the effect to be given to a chain of circumstances, a court can never be sure that a defendant's own testimony and explanation of such circum-

19. *See, also,* Weinstein & Berger, *supra,* at 609–57:

"Many crimes, however, while perhaps causing the average man to shun their perpetrator, do not upon analysis support the inference that the person who committed them has a specific proclivity for lying on the witness stand."

20. *Cf., however, United States v. Ortiz, supra.*

21. For failure by the District Court to state its "specific" reasons for finding them admissible, the probation violation conviction and the forgery conviction of the appellant were, in our opinion, as inadmissible as the sodomy conviction under 609(b). However, if this procedural

defect were not present, it might be that the forgery conviction would have probative value on credibility, though we do not have occasion to rule on that point at this stage, but, in any event, whether such probative value would have outweighed "substantially" prejudicial impact should have been carefully considered. Since the record is barren of any details of the probation violation it is difficult, however, to see how the District Court could have justified the ruling as to this conviction. The admission of such conviction, in this state of the record, was as improper as the admission of the sodomy conviction both on procedural and substantive grounds.

stances, if given, may not have influenced the jury. We cannot, therefore, say any more than the Court in *Smith* was able to say, "with fair assurance * * * that the judgment [of the jury] was not substantially swayed by the error" arising from the ruling that the out-of-date convictions was admissible, since, by reason of the District Court's erroneous ruling, the appellant was denied the opportunity to give his explanation of the incriminating circumstances to the jury. Accordingly, whether we apply the standard of harmless error as articulated in *Kotteakos*[22] or *Chapman*,[23] it cannot be said that the error in the ruling of the District Court with reference to the sodomy conviction in particular was harmless.

Accordingly, the judgment of the District Court is

*REVERSED AND REMANDED FOR A NEW TRIAL.*

WIDENER, Circuit Judge, concurring:

While I concur in the result, I respectfully *do not agree with much of the reasoning* of the panel, so I think it better that I state my views separately rather than merely concurring without opinion in the judgment of the court.

I

The record shows that the government intended to prove against the defendant by certified copies of court records the following items:

1951

Conviction of sodomy.

1955

Conviction of violation of probation (apparently from the sodomy conviction).

1961

Conviction of forgery.

1970

Interstate transportation of stolen motor vehicle.[1]

It is important to note that the government contended that these convictions in and of themselves were to be offered against the defendant if he testified as going to his credibility as a witness.

Putting to one side for the moment the convictions of sodomy, forgery, and interstate transportation of a stolen motor vehicle, I do not see that conviction of a probation violation is a crime of any kind so that its proof under Rule 609(a) would not have been that the defendant had been "convicted of a crime," and therefore it is not admissible under that rule.

The only other theory on which the probation violation could have been shown was under Rule 608(b) as a specific instance of the "conduct of a witness, for the purpose of attacking . . . his credibility." Even assuming that an inquiry on cross-examination under Rule 608(b) would have been proper, and that may be doubtful since the defendant may have broken his probation by going to Montana, it nevertheless "may not be proved by extrinsic evidence." Fed.Rules of Evid. § 608(b).

Because the issue in the case is whether the government should have been permitted to prove the fact of the probation violation by extrinsic evidence as going to the credibility of the defendant, and the district court erroneously ruled that it could, I think this is plain error, although the point is not argued in the briefs. I have examined West Virginia Code, Chapter 62, Article 12, especially § 62–12–10, and do not find that violation of probation is a separate crime.

---

**22.** *Kotteakos v. United States* (1946) 328 U.S. 750, 764–5, 66 S.Ct. 1239, 90 L.Ed. 1557.

**23.** *Chapman v. California* (1967) 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705, *reh. denied* 386 U.S. 987, 87 S.Ct. 1283, 18 L.Ed.2d 241.

**1.** The FBI record, which is the only documentary evidence before us, also shows Cavender was convicted of "bond default" for which he was "arrested and received" on November 14, 1969. Apparently the conviction was for bail jumping under 18 U.S.C. § 3150, and if in connection with his Dyer Act charge would have been an additional felony not pressed by the government at trial.

## II

I further think the judgment remanding the case for a new trial is sustainable for somewhat the same reasons given by the panel as its opinion requires an express finding that the probative value of the convictions substantially outweigh their prejudicial effect, and I might not comment on the requirement of stating specific facts and circumstances as mentioned in the rule were that all.

But the breadth of the opinion of the panel is so great that I think an analysis of it and the rule should be undertaken. Not the least of my objections is its discussion of the consideration, by their nature, to be given various felonies when offered for the purpose of impeachment. The majority opinion seems to fly in the face of the congressional history of the rule.

In all of the discussions, we must keep in mind that admissibility under Rule 609(b) is forever tied to admissibility under Rule 609(a), for Rule 609(b) is nothing more nor less than an added limitation on the admissibility of conviction of other crimes already limited by 609(a). In order to be admissible, a previous criminal conviction must pass the test of both 609(a) and 609(b). A discussion of them cannot be, in the circumstances presented here, nicely parsed so that what is said of § (a) does not apply to § (b) and vice versa.

As sent to Congress by the Supreme Court, Rule 609(a) provided that:

"For the purpose of attacking the credibility of a witness, evidence that he has been convicted of a crime is admissible but only if the crime (1) was punishable by death or imprisonment in excess of one year under the law under which he was convicted or (2) involved dishonesty or false statement regardless of the punishment." U.S.Code and Administrative News, 93rd Congress, 2nd Session, 1974, House Report 93–650, p. 7084 (Legislative History).[2]

The House Subcommittee on Criminal Justice added to the Supreme Court's proposal, in subsection 1, the words "unless the court determines that the danger of unfair prejudice outweighs the probative value of the evidence of the conviction," essentially the same wording which presently appears in that rule with emphasis perhaps slightly changed. The House Judiciary Committee, however, further amended the provision "to permit attack upon the credibility of a witness by prior conviction only if the prior crime involved dishonesty or false statement." Leg.Hist. p. 7084. The House Judiciary Committee provision providing for proof of prior conviction of a crime only if the crime involved dishonesty or false statement became a part of the House Bill. Conference Report 93–1597, Leg.Hist. p. 7102; Senate Report 93–1277, Leg.Hist. p. 7061. The Senate, however, on the floor, disagreeing with its Judiciary Committee, amended the House Bill to adopt the original language submitted by the Supreme Court. See *United States v. Smith*, 179 U.S.App.D.C. 162, 175, n. 24, 551 F.2d 348, 361, n. 24 (1976); Senate Report 93–1277, Leg.Hist. pp. 7060–61. The Conference Committee adopted the Senate amendment with an amendment similar to that originally added by the House Subcommittee on Criminal Justice to the Supreme Court's submitted language to subsection (1) that such evidence be admissible if "the court determines that the probative value of the conviction outweighs its prejudicial effect to the defendant." Conference Report 93–1597, Leg.Hist. p. 7102.

It is seen, I think beyond doubt, that the language of the House limiting the introduction of evidence of conviction of previous crime only if the crime involved dishonesty or false statement[3] was positively rejected. If this is not shown by an analysis of the legislative history, as I think it is, when recourse is had to the proceedings in the Senate, there can be no doubt of what

---

**2.** A concise and readable discussion, editorial comment, and Legislative History is found in Redden and Saltzburg, *Federal Rules of Evidence Manual*, p. 180 et seq.

**3.** See ALI, Model Code of Evidence, Rule 106 (1942).

happened. The Senate Judiciary Committee, as to defendants and not other witnesses, concurred in the House version of the bill. Senate Report 93–1277, Leg.Hist. pp. 7060–61. On the Senate floor, however, Senator McClellan led an attempt to scrap the Senate Judiciary Committee version, which had adopted the House bill, in favor of a return to the original Supreme Court version of Rule 609(a). A part of his statement of position is worthy of quotation:

> "I cannot accept that conclusion [limiting convictions shown to those involving dishonesty or false statement and make ineligible crimes of murder, rape, armed robbery, and other serious felonies]. Surely a person who has committed a serious crime—a felony, will just as readily lie under oath as someone who has a misdemeanor involving lying. Would a convicted rapist, cold-blooded murderer, or armed robber really hesitate to lie under oath any more than a person who has previously lied? Would a convicted murderer or robber be more truthful than such a person?
>
> "Of course not."

The Senate agreed with Senator McClellan and Senators Hart, Hruska, and Thurmond taking similar positions. *United States v. Smith*, 179 U.S.App.D.C. 162, 175, n. 24, 180, Appendix 551 F.2d 348, 361, n. 24, 366 Appendix (1976).

The language as well as the theme of the House Bill were thus rejected and the original language of the Supreme Court adopted subject only to the qualification that, other than for a crime involving dishonesty or false statement, the court should determine that the probative value of admitting the prior conviction outweighs its prejudicial effect to the defendant.

With this in mind, I think the discussion of the panel on pages 533, 534 of the slip opinion is largely not consistent with that which Congress intented when it passed the rule.[4]

While the opinion may seem at first glance to concern itself only with a general rule relating to "crimes which are generally spoken of as meeting this test of giving a basis for an inference of a 'propensity to lie' ", its clear import is to limit the consideration of felonies which may be introduced for impeachment to those which " 'rest on dishonest conduct' " or " 'a tinge of falsification' ", or involve " 'some element of deceit, untruthfulness, or falsification' ". P. 534. This is so because the opinion predicates its discussion with the sentence that "Under the Rule, the pivotal issue of probative value of a conviction turns largely on a consideration of the nature of the conviction itself." P. 534. The opinion thus apparently adopts the version of the Rule as passed in the House Bill and which was

---

4. I also do not think the holdings of the cases cited support the court's conclusion to a reasonable degree.

*Gordon* was not decided under the Federal Rules of Evidence, and even that case noted, as it upheld the admission of a previous conviction of larceny for impeachment purposes, that ". . . the case had narrowed to the credibility of two persons—the accused and his accuser—and in those circumstances there was greater, not less, compelling reason for exploring all avenues which would shed light on which of the two witnesses was to be believed." 127 U.S.App.D.C., p. 348, 383 F.2d p. 941. *Bastone* and *Cox* were also not decided under the Federal Rules of Evidence. *Bastone* said by way of dictum the rules would have barred the use of a rape conviction because it occurred 22 years ago, and that the prejudicial effect far outweighed the probative relevance of the prior conviction. *Cox* was a conviction for prostitution.

I suggest that *Ortega* would not be followed by this circuit if the question there were squarely before us. It held under the Federal Rules of Evidence that a conviction for shoplifting was not a crime involving "dishonesty or false statement," despite an apparent holding of the Fifth Circuit to the contrary in *United States v. Carden*, 529 F.2d 443 (5th Cir. 1976). In *Ortega*, the rationale of the court was: "An absence of respect for the property of others is an undesirable character trait, but is not an *indicium* of a propensity toward testimonial dishonesty." P. 806. It is at once apparent that this holding is quite to the contrary of *Gordon*. In *Thompson*, the court held, under the new rules, that a misdemeanor conviction involving marijuana was not admissible because not for a crime involving "dishonesty or false statement," and while less controversial than the *Ortega* holding, it is nevertheless in apparent conflict with the District of Columbia Circuit, as explained in the text of the opinion.

specifically rejected. This is additionally shown by the fact that it holds that the admission of the sodomy conviction on its face, "without more in this record," P. 534, is "a manifest abuse of discretion," P. 534, thus necessarily holding that the sodomy conviction, although a felony, necessarily did not go to the witness' credibility absent something more. Had the ruling of the majority been based upon the absence of explicit findings when requested, I think it well might be consistent with the intent of the rule, but when it bases its ruling alternately on the "nature of the conviction itself," I think it departs from the clear intent of Congress which expressed in no uncertain terms that felonies generally were admissible, subject to the balancing tests of §§ 609(a) and (b).

As I will demonstrate later, those crimes which are *crimen falsi* are necessarily probative. It is the other felonies which the rule intended to admit under the circumstances provided for either in § 609(a) or § 609(b) with which we are here concerned.

While it may be argued that some convictions of sodomy might not affect the credibility of a witness, it is more realistic to argue that most would, especially when a prison sentence has resulted, for I think the setting of a felony for the purpose of trial impeachment should be in at least a relatively contemporaneous time frame and that we may not depend on the mores of ancient Athens or Sparta in ascertaining whether or not a conviction for sodomy has to do with the credibility of one convicted of that crime. Perhaps the defendant may offer an explanation but perhaps he may not. Here, he has not, and I could not say that on its face and absent explanation, the admission of the crime is a manifest abuse of discretion.

### III

Not only do I believe the opinion is overbroad in the discussion just mentioned, I think the same is true in another particular.

The opinion does not mention, or base its judgment on, the fact that the defense attorney on two occasions requested the trial court to make the very findings which the opinion faults the trial court for not making. For example, this is one request: "Mr. Stowers: Well, your Honor, I just respectfully request, and I don't want to push you on this, but it is my feeling that the law requires you to make specific findings on the record for your reasons for allowing this in and I think that is what the law requires."

Rather than base its opinion on the denial of the reasonable request of the defense attorney, which may well have been contemplated by the new rules, the court paints with a broad brush to cover all situations, and the clear implication of the opinion (for it reverses) is that it is the rule in this circuit to be followed in each instance for it is not predicated on the denial of the reasonable request of the defense.

I do not agree with such action of the panel. Unless the reversal is based on the denial of the reasonable request of the defense attorney, as it might be, and I think it ought to be, I would affirm with respect to that point as was done in *United States v. Cohen*, 544 F.2d 781 (5th Cir. 1977), on facts almost indistinguishable from those here. Not mentioned in the opinion of the panel is the fact that the district judge heard the defense attorney on more than one occasion on this matter, and it was argued at least at length. The only thing the district judge did not do was to make explicit findings. With nothing shown by the defendant, or even offered, despite the hearings on the matter, I do not see how it can reasonably be said that the ruling of the district court as to the convictions for forgery and sodomy necessarily constitute an abuse of discretion.[5]

### IV

I find a possible implication in footnote 18 of the opinion that the forgery convic-

5. I think a reasonable rule would be to require specific explicit findings if requested. Cf. FRCrP 23(c).

tion might not have probative value on credibility. While that footnote may be read in more than one way, I caution that I think it should be construed in the light of Conference Report 93–1597 previously mentioned. That report states that "By the phrase 'dishonesty and false statement', the Conference means crimes such as perjury or subornation of perjury, false statement, criminal fraud, embezzlement, or false pretense, or any other offense in the nature of *crimen falsi*, the commission of which involves some element of deceit, untruthfulness, or falsification bearing on the accused's propensity to testify truthfully." Leg.Hist. p. 7103.

Forgery clearly falls within this definition and thus the statute declares its probative value on credibility.[6] The only question before the district court on remand as to the forgery conviction should be whether or not its probative value "supported by specific facts and circumstances substantially outweighs its prejudicial effect," and this due only to lapse of time. For if the lapse of time had been less than 10 years, admitting the conviction of forgery would be mandatory for "judicial discretion granted with respect to the admissibility of other prior convictions is not applicable to those involving dishonesty or false statement." Conference Report 93–1597, Leg.Hist. p. 7103.

V

One further matter deserves comment.

In footnote 6, p. 531, is the statement that each prior conviction is to be considered separately. I do not find the legislative history necessarily supports that construction, and it seems to me it might legitimately be found that the commission of a string of felonies would more likely show a tendency to lie than would an isolated incident.

While there does not appear in the record a detailing of the various prior convictions of this defendant, an examination of the FBI report would make the following conclusions entirely reasonable.[7] He was convicted in 1951 of sodomy, at which time the imposition of sentence may have been withheld, and he was placed on probation for five years. Or, instead of the imposition of sentence being withheld, he may have been sentenced to 1–10 years and placed on probation. He remained on probation until 1955, at which time he broke probation for a cause not appearing in the record unless it was that he went to Montana, as suggested in argument.[8] In all events, he violated his probation, and in 1955 he was sentenced to 1–10 years. He remained in prison until 1957, when he was paroled. He was discharged from parole in 1966. During the time he was on parole, in 1961, he was convicted of forgery and sentenced to 1–10 years. The record does not disclose when he was released from prison on the forgery charge but apparently prior to 1968. Neither does the record disclose when any parole on account of the forgery charge expired. He was convicted in 1969 for bond default, which I believe, as previously explained, may well have been bail jumping and a felony, and was sentenced to 12 months for that offense. In 1970, he was convicted of violation of the Dyer Act, interstate transportation of a stolen motor vehicle, and received three years' probation. Whether he received a fixed sentence subject to probation or a suspended imposition of sentence is not disclosed. Cavender's record does not disclose a blameless life other than the sodomy conviction. Indeed, a fair reading of his record reveals that for a substantial majority of the time for the past 27 years he has either been confined

---

**6.** There is no occasion here to comment on one Conference use of "dishonesty and false statement" and the statutory use of "dishonesty or false statement." See *Smith*, Appendix, supra.

**7.** These are facts which might be revealed upon inquiry. See p. 531, and part VI of this opinion.

**8.** The FBI report suggests Cavender's trip to Montana may have broken another probation, not for the sodomy conviction.

for the conviction of felony, or on probation or parole as a result of such conviction.

Rule 609(b) as submitted by the Supreme Court provided that a conviction otherwise admissible under Rule 609(a) would not be admitted "if a period of more than 10 years has elapsed since the date of the release of the witness from confinement imposed for his most recent conviction, or the expiration of the period of his parole, probation, or sentence granted or imposed with respect to his most recent conviction, whichever is the later date." As the legislative history states, under this wording the witness' entire past record of criminal convictions could be used for impeachment if the witness had been released most recently from confinement or parole or probation within 10 years of the trial. House Report 93–650, Leg.Hist. p. 7085.

The House Judiciary Committee amended the rule as submitted by the Supreme Court "to provide that upon the expiration of 10 years from the date of a conviction of a witness, or of his release from confinement for that offense, that conviction may no longer be used for impeachment." Undoubtedly this is where the thought arose that previous convictions should be considered one at a time. The Committee was of the view that after ten years following release from confinement or the date of conviction the probative value of the conviction had diminished to a point where it should no longer be admitted. House Report 93–650, Leg.Hist. p. 7085. The House Bill thus excluded from consideration all convictions more than 10 years old or for which confinement had expired more than 10 years before the trial.

The Senate, however, added to the House Bill an amendment granting the court discretion to admit convictions over 10 years old but only upon determination by the court that the probative value of a conviction supported by specific facts and circumstances substantially outweighed its prejudicial effect. Senate Report 93–1277, Leg. Hist. pp. 7061–7062.

The Conference adopted the Senate amendment with an amendment requiring notice by a party that he intended to request the court to allow him to use a conviction older than 10 years. Conf.Rep. 93–1597, Leg.Hist. p. 7103. I find nothing in the legislative history explaining the meaning of the finding which the rule requires a court to make that such evidence may be admitted if the court determines "in the interests of justice, that the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect." The just quoted language is that which gives effect to the Senate amendment.

I do not think on the record before us that we can say it is necessarily an abuse of discretion for the district judge to consider all the felonies a defendant has committed in determining whether to admit any of them into evidence. If the district court is going to be allowed any latitude in determining what is the interest of justice, it seems to me that should include multiple felony convictions such as possessed by the defendant here.

I do not say that the record of the defendant as it appears before us necessarily makes those convictions admissible. What I do say is that the district court should be allowed to consider all of them in its determination as to whether or not to admit any of them. At least if the facts behind the convictions are to be inquired into, as well as the facts surrounding them, I think the district court should be allowed to consider all of this evidence together prior to a direction from us to that court to consider the convictions one at a time.

## VI

In the hope of publicizing to some small extent the dilemma in which district judges presently find themselves, I cannot help but comment on the Congressional amendments to the rule offered by the Supreme Court, and especially to the weighing of probative value against prejudice which appears in one form or another in both Rules 609(a) and 609(b).

It is at once apparent that in many cases the more probative a prior conviction is, the more prejudicial it will be. So the prejudice in many cases will increase as does the probative value. The end result then, if the introduction of the conviction is held to be objectionable, is that it will be so ". . . not because it has no appreciable probative value, but because it has too much." *Wigmore on Evidence*, 3d Ed., Vol. I, p. 646. The provision in the rule providing for balancing has been called by McCormick in only slightly different context the "Serpent of uncertainty crawling into the Eden of trial administration." *McCormick on Evidence*, 2d Ed., pp. 85–86. The only guidance I can find in the congressional history into the administration and application of the balancing test provided for in the rule is in the Conference Report where it is stated that "Such evidence [meaning all admissible under 609(a)(1)] should only be excluded where it presents a danger of improperly influencing the outcome of the trial by persuading the trier of fact to convict the defendant on the basis of his prior criminal record." Leg.Hist. p. 7103. If this is the guideline to use, then it would seem that under Rule 609(a)(1) the conviction of any crimes so described in that rule is generally admissible unless the defendant has committed before the same or a quite similar crime to that with which he is presently charged. For it seems inescapable that conviction of the same or a clearly related offense would certainly be the most persuasive conviction to a trier of fact in ascertaining guilt or innocence.[9]

Along the same line, the apparent admonition of the panel to ascertain "the facts involved in the crimes," p. 531, would seem to me to place the defendant at a terrible disadvantage in the ordinary case. While it is true that the defendant is bound to know of the facts surrounding his previous convictions, he has formerly been protected by the law as to the disclosure of their specific factual background. That has been the law in this circuit. *United States v. Samuel*, 431 F.2d 610 (4th Cir. 1970). See also *Cox*, p. 71, for the same rule in the Fifth Circuit. While the new rule may require some departure from *Samuel* (as to dates), I would only alter it the minimum required. If the district court in each instance must ascertain the facts surrounding the previous crimes of which defendant has been convicted in determining its application of Rule 609(a) and (b), then the administration of the new rule is self-defeating and falls squarely against the reasons for the general rule that evidence of prior convictions is inadmissible in a criminal case, i. e. the trial of collateral issues and the danger of unfair surprise. It will thus enable the government to get the facts on which the defendant was previously convicted before the court in each instance, instead of merely the fact of conviction. I suggest that even in the instant case, while the defendant may enjoy the temporary advantage of a new trial, spreading the facts surrounding his previous convictions into the record cannot improve his position with the court, but only furnish the basis of a factual finding to support admitting them should the district court be so inclined after hearing the evidence.[10]

---

**9.** See statement by Congressman Hungate in presenting the Conference Report to the House, Leg.Hist. p. 7108, and *Ortega*, p. 806, for the proposition that the balancing test of Rule 609(a) and (perhaps 609(b)) does not apply in the impeachment of a government witness, but that the conviction of felony is ipso facto admissible.

**10.** A reasonable construction of the new rules might permit the introduction of facts surrounding the offense by the defendant, should he contest admissibility, but not require it. Neither I think should the government be permitted to introduce such facts merely by offering to use the conviction.