**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
<u>Plaintiff-Appellee,</u>

v.                                                                    No. 97-4399

TIMOTHY OLANDO HOLLAND,
<u>Defendant-Appellant.</u>

UNITED STATES OF AMERICA,
<u>Plaintiff-Appellee,</u>

v.
                                                                      No. 97-4400
EDWARD LEWIS SHELTON, a/k/a
Elwood Craighead, a/k/a Big Ed
Caine, a/k/a Eddie Caine,
<u>Defendant-Appellant.</u>

UNITED STATES OF AMERICA,
<u>Plaintiff-Appellee,</u>

v.
                                                                      No. 97-4418
JAMES EDWARD MATTOX, a/k/a
Snookie,
<u>Defendant-Appellant.</u>

Appeals from the United States District Court
for the Western District of Virginia, at Roanoke.
Samuel G. Wilson, Chief District Judge.
(CR-96-76)

Submitted: February 24, 1998

Decided: September 2, 1998

Before MURNAGHAN and NIEMEYER, Circuit Judges, and
HALL, Senior Circuit Judge.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

Randy V. Cargill, MAGEE, FOSTER, GOLDSTEIN & SAYERS,
Roanoke, Virginia; Christopher K. Kowalczuk, RICHARD LEE
LAWRENCE & ASSOCIATES, Roanoke, Virginia; David D.
Walker, Salem, Virginia, for Appellants. Robert P. Crouch, Jr.,
United States Attorney, Joseph W. H. Mott, Assistant United States
Attorney, Roanoke, Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See
Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

In 1995 the Drug Enforcement Administration and local law
enforcement agents began investigating illegal drug transactions
occurring in the Chestnut Hill Trailer Park in Franklin County, Vir-
ginia. The investigation resulted in a fifty-one count superseding
indictment charging Appellants Timothy Olando Holland, Edward
Lewis Shelton, James Edward Mattox, and seventeen other defen-
dants with various conspiracy and associated drug distribution
charges. Following a jury trial, Appellants were each convicted of dis-
tributing or possessing with intent to distribute cocaine and conspiring
to possess with intent to distribute cocaine base in violation of 21
U.S.C. §§ 841(a)(1), 846 (1994). Finding no merit to their claims on
appeal, we affirm.

2

At trial, six witnesses testified about Holland's cocaine distribution activities. Barry Armstrong, an informant working undercover for the DEA, testified that he purchased one ounce quantities of cocaine from Holland on January 25 and January 26, 1996. During one purchase Armstrong testified that he saw Holland sell one-half ounce of cocaine to another individual. Armstrong further stated that after he made the second purchase he arranged with Holland to buy two more ounces of cocaine. Holland informed Armstrong that he could provide two ounces but that they would have to drive to Gretna, Virginia, to get the cocaine. Holland then gave Armstrong a telephone number where he said he could be reached in Gretna. Armstrong testified that while he was driving to Gretna he passed Holland traveling in the opposite direction. Armstrong then called the number that Holland had given him and spoke with Holland's brother. Holland's brother stated that he was aware of the arranged drug deal and agreed to do the deal himself. Holland's brother then sold Armstrong two ounces from a bag he had containing one-half pound of cocaine.

Coconspirator Cassandra Craighead testified that Holland became involved in cocaine in either late 1993, late 1994 or early 1995. She further testified that she believed he initially became involved by selling $500 packages of cocaine for Anthony Harris. When asked how much cocaine Holland was obtaining at a time in 1996 Craighead responded, "I remember one time him purchasing a quarter . . . [o]unce of crack cocaine." (JA 308).

Coconspirators Thomas Cook and Melvin Hairston each testified that they bought small quantities of cocaine from Holland on two separate occasions. Cook additionally testified that he occasionally saw Holland sell crack to other people. Coconspirator Tyrone Pullen testified that in late 1995 Holland was selling small quantities of cocaine. Pullen further testified that after his release from prison in July 1996, Holland was still selling small quantities but was buying a couple of ounces every two or three days for approximately three weeks.

Coconspirator and leader of the conspiracy Anthony Harris was the final witness to testify about Holland's drug activities. Harris testified that he supplied Holland with either quarter or half-ounce quantities of cocaine, and recalled, "a couple of times he bought ounces." (JA

3

625). Harris further testified that he sold Holland an ounce of cocaine on both January 24 and January 25, 1996.[1]

Holland contends that the district court miscalculated the quantity of drugs attributable to him for sentencing purposes. For sentencing purposes, drug quantities attributable to persons convicted of conspiracy to distribute illegal drugs are determined by examining "the quantity of narcotics reasonably foreseeable to each conspirator within the scope of his agreement." United States v. Irvin, 2 F.3d 72, 78 (4th Cir. 1993); see also U.S. Sentencing Guidelines Manual § 1B1.3(a)(1)(B) (1996). At sentencing, the government must prove the quantity of drugs for which a defendant should be held accountable by a preponderance of the evidence. United States v. Gilliam, 987 F.2d 1009, 1013 (4th Cir. 1993). This court reviews determinations of reasonable foreseeability and quantity of drugs for clear error. See United States v. Banks, 10 F.3d 1044, 1057 (4th Cir. 1993).

We find that the evidence adduced at trial and sentencing provides adequate support for the district court's decision to hold Holland accountable for over 500 grams of cocaine.[2] Although the probation officer used an imprecise method to obtain the 524.475 gram amount, in circumstances where there are no drugs seized, a district court may approximate the quantity to be used for sentencing. See United States v. Uwaeme, 975 F.2d 1016, 1019 (4th Cir. 1992). In addition, hearsay alone can provide sufficiently reliable evidence of quantity. Id. Even if the district court chose not to accept the probation officer's report and testimony, the evidence at trial provided an independent basis upon which the court could have attributed over 500 grams of cocaine to Holland. Therefore, we find that the district court's decision to hold Holland accountable for 524.475 grams of cocaine was not clearly erroneous.

A district court's evidentiary rulings are entitled to substantial deference and will not be reversed absent a clear abuse of discretion.

_____
[1] Presumably, this is the cocaine that Holland sold to Armstrong on those same dates.
[2] See 28 U.S.C. § 2106 (1994); United States v. Burnette, 698 F.2d 1038, 1048 (9th Cir. 1983) (noting that an appellate court may affirm the district court on any basis fairly presented in the record).

4

<u>United States v. Moore</u>, 27 F.3d 969, 974 (4th Cir. 1994). Appellants contend that the district court erred in ruling Armstrong's 1977 larceny conviction inadmissible under Fed. R. Evid. 609(b). Rule 609(b) provides that evidence of prior convictions over ten years old are not admissible "unless the court determines, in the interests of justice, that the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect." Fed. R. Evid. 609(b). This Court has cautioned that "the district court is only to depart from the prohibition against the use for impeachment purposes of convictions more than ten years old `very rarely and only in exceptional circumstances.'" <u>United States v. Beahm</u>, 664 F.2d 414, 417 (4th Cir. 1981) (quoting <u>United States v. Cavender</u>, 578 F.2d 528, 530 (4th Cir. 1978)).

The district court found that the Appellants failed to articulate sufficient facts and circumstances to demonstrate that the probative value of Armstrong's conviction substantially outweighed its prejudicial effect. During voir dire, Armstrong admitted his prior conviction and the circumstances surrounding his decision to become a police informant. Armstrong testified that he was sentenced to five years probation and restitution for his larceny conviction. However, after making full restitution, his probation was terminated after two or three years. Subsequently, Armstrong was able to restore his gun and voting rights. Considering the strong presumption against the admission of convictions over ten years, Armstrong's apparent rehabilitation, and the marginal probative value of the conviction, we find that the district court acted within its discretion in excluding Armstrong's prior conviction.

Accordingly, we affirm Appellants' convictions. We have dispensed with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

<u>AFFIRMED</u>

5