■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ANTHONY CONTRERAS, Appellant. — Judgment, Supreme Court, Bronx County (Covington, J.), rendered January 10, 1983, convicting defendant, after a jury trial, of robbery in the second degree and sentencing him to an indeterminate term of imprisonment of from 5 to 15 years, reversed, on the law and the facts and as a matter of discretion in the interest of justice, and the indictment dismissed with leave to resubmit to the Grand Jury, the matter remanded to Trial Term for the purpose of issuing a securing order pursuant to CPL 210.45 (9), and defendant committed to the custody of the Department of Correction pending the issuance of such order.

On the afternoon of February 15, 1982, 79-year-old Esther Josephs was depositing letters in a mailbox when she was approached from behind, pushed against the mailbox and told to surrender her pocketbook. As she was pressed against the mailbox, Mrs. Josephs felt pain in her left arm and stomach and saw blood trickling down her arm. She turned to face her assailant and observed a light-mustachioed man in a dark-red "fancy jacket", with two front teeth missing, and holding a six-inch "shiny object." He grabbed at her pocketbook. Denis Cruz, standing nearby, heard the victim's screams, grabbed a tire iron and shoved away Mrs. Josephs' assailant, whom he later identified as defendant. Mr. Cruz was also able to recover the pocketbook. Police officers responded to the scene approximately five minutes later and took the victim and Mr. Cruz in a patrol car to look for the perpetrator. Within three or four minutes after they began cruising the neighborhood, Cruz pointed to defendant, sitting on a park bench in a maroon jacket, as the culprit.

Defendant, 50 years of age, had a light mustache and was missing two front teeth. He was arrested immediately; however, no weapon was recovered. Later, at the hospital, a doctor found a small one-quarter-centimeter abrasion on Mrs. Josephs' arm to which, after cleansing the wound, he applied a butterfly stitch, described as "basically a piece of sterile tape across the cut." Mrs. Josephs was discharged immediately and was not required to return to the hospital. Her left forearm was found to be "nontender" with "full range of motion."

Defendant, arguing that he was arrested solely because he was wearing a maroon jacket, offered a defense of misidentification. Acquitted of robbery in the first degree (threatened use of a dangerous instrument), he was, however, convicted of robbery in the second degree, based upon a finding that he caused physical injury to Mrs. Josephs in the course of the robbery.

At the outset we agree with defendant that the element of physical injury was not established as a matter of law. " 'Physical injury' means impairment of physical condition or substantial pain." (Penal Law § 10.00 [9].) The People failed to establish any impairment of physical condition. While Mrs. Josephs did testify to pain, which is purely subjective and only one factor to be considered, we are of the view that the pain of which she complained did not reach the objective level required to be considered substantial. (*See, Matter of Philip A.,* 49 NY2d 198.) Thus, the conviction of second degree robbery, premised upon a physical injury, cannot stand. While we could reduce the conviction to robbery in the third degree and remand for resentencing, in our opinion several errors committed during the course of the trial deprived defendant of a fair trial and warrant a reversal.

Trial Term's *Sandoval* ruling would have permitted cross-examination of defendant about four prior convictions, a grand larceny in 1964, a larceny in 1962, a burglary in 1962 and a felonious assault in 1962, all of which occurred 18 to 20 years before the incident involved herein. All that was excluded were several other convictions between 1950 and 1956 for petit larceny and drug-related offenses. While a court has a wide range of discretion on such applications (*see, People v Mackey,* 49 NY2d 274, 281-282), we find the convictions upon which inquiry would have been allowed, had defendant testified, to be too remote in time to be truly probative on credibility. (*See, People v Ellis,* 94 AD2d 652; *People v Pippin,* 67 AD2d 413, 418.) *Luce v United States* (469 US __, 105 S Ct 460), upon which the dissent relies, is inapposite, since it interprets Federal law. *People v Sandoval* (34 NY2d 371), which reflects this State's policy, does not impose any obligation upon a defendant to take the stand as a condition to its applicability.

Furthermore, the prosecutor, in summation, exceeded fair comment when he referred to matters not in evidence. For instance, the prosecutor told the jury that Cruz probably missed work to come to court to testify and that he would never forget defendant's face because it was frozen in his memory. Cruz never testified that he missed work or that defendant's face was frozen in his memory. The prosecutor also referred to testimony allegedly provided by three police officers as to a description given to each of them by Cruz of a "male Hispanic, approximately 5 foot 7 inches in size, missing his front teeth, with a mustache, with a red coat on". No such testimony was given. Two of the officers testified only to defendant's appearance at the time he was arrested. The other never even spoke to Cruz on the day of the arrest. The only officer who testified as to the description furnished by Cruz was a defense witness who limited Cruz's description to the clothing worn by the perpetrator. These references by the prosecutor to the descriptions given to the officers bolstered a crucial element of the People's case, identification. Indeed, it was essentially the sole issue in dispute. In the circumstances, the totality of these errors warrants a new trial.

Since defendant was acquitted of robbery in the first degree and the evidence will not sustain the second degree robbery conviction, and the indictment does not contain any other robbery charge, although robbery in the third degree, as to which the evidence is sufficient, was submitted as a lesser included offense but never considered by the jury in light of its finding of guilt on robbery in the second degree, there is no pending robbery charge to support a remand. Accordingly, the indictment must be dismissed. Such dismissal, however, is with leave to resubmit to the Grand Jury on robbery in the third degree or any lesser included offense. (*See, People v Fudger,* 73 AD2d 1020; *also, People v Gonzalez,* 61 NY2d 633, 635; *People ex rel. Poulos v McDonnell,* 302 NY 89.) Concur — Sandler, Sullivan and Carro, JJ.

Kupferman, J. P., dissents in a memorandum as follows: The defendant not having taken the stand, the *Sandoval* ruling cannot be called in question. (*See, Luce v United States,* 469 US —, 105 S Ct 460.)

As to the evidence, it was made clear, as the complainant testified, that the defendant had two front teeth missing. While the popular song is to the effect "All I Want For Christmas Is My Two Front Teeth", and it is now into the new year, this vacuum can make a lasting impression. Witness the memory of the missing front teeth of the heavyweight boxer, Leon Spinks.

It cannot be said that the complainant did not suffer "substantial pain." (Penal Law § 10.00 [9].)

I would affirm.