STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v.
MITCHELL C. GRAY, DEFENDANT-APPELLANT.

Superior Court of New Jersey
Appellate Division

Submitted October 29, 1985—Decided November 20, 1985.

Before Judges MICHELS, GAULKIN and STERN.

*Thomas S. Smith,* Acting Public Defender, attorney for appellant (*James R. Freeswick,* Designated Counsel, on the brief).

*Irwin I. Kimmelman,* Attorney General, attorney for respondent (*Arthur S. Safir,* Deputy Attorney General, of counsel).

PER CURIAM.

Defendant was indicted for second degree sexual assault, contrary to *N.J.S.A.* 2C:14-2b (count one), and first degree aggravated sexual assault, contrary to *N.J.S.A.* 2C:14-2a(1) (count two). At a jury trial defendant was acquitted on the latter count but convicted of the former. He was sentenced to the custody of the Commissioner of Corrections for 10 years, with four years of parole ineligibility, and assessed a $25 penalty for the benefit of the Violent Crimes Compensation Board. The victim was 4½ years old.

On this appeal defendant argues:

POINT I  THE STATE'S INTRODUCTION OF EVIDENCE REGARDING DEFENDANT'S DISTRIBUTION, POSSESSION AND USE OF A MARIJUANA JOINT PRIOR TO THE ALLEGED SEXUAL OFFENSE CONSTITUTED PREJUDICIAL ERROR, REQUIRING A NEW TRIAL.

POINT II  THE LAW DIVISION'S DENIAL OF DEFENDANT'S PRE-TRIAL MOTION TO EXCLUDE EVIDENCE OF HIS TWO PRIOR CONVICTIONS CONSTITUTED AN ABUSE OF DISCRETION, REQUIRING A NEW TRIAL.

POINT III   THE STATE'S INTRODUCTION INTO EVIDENCE OF THE INCULPATORY PORTION, BUT NOT THE EXCULPATORY PORTION, OF DEFENDANT'S POST-ARREST, IN-CUSTODY STATEMENT, CONSTITUTED PLAIN ERROR, REQUIRING A NEW TRIAL.

POINT IV   THE DEFENDANT MAY HAVE BEEN CONVICTED OF A CRIME NOT ALLEGED IN THE INDICTMENT DUE TO THE TRIAL JUDGE'S IMPROPER CHARGE TO THE JURY.  ACCORDINGLY, THE JUDGMENT OF CONVICTION SHOULD BE VACATED, AND THE INDICTMENT DISMISSED.

POINT V   THE STATE FAILED TO PROVE DEFENDANT GUILTY BEYOND A REASONABLE DOUBT.

POINT VI   THE STATE'S INTRODUCTION OF EVIDENCE REGARDING DEFENDANT'S REFUSAL TO LEAVE THE POLICE CAR UNLESS HE WAS PROVIDED WITH A MATCH FOR HIS CIGARETTE, AND THE PROSECUTOR'S ARGUMENT TO THE JURY REGARDING THAT EVIDENCE, CONSTITUTED PREJUDICIAL ERROR, REQUIRING A NEW TRIAL.

We have carefully reviewed the record in light of these contentions and the arguments advanced in support thereof, and conclude that, with the exception of Point IV, they are clearly without merit.  *R.* 2:11-3(e)(2).[1]

█   With respect to the fourth point, defendant was indicted in the first count for second degree sexual assault, *N.J.S.A.* 2C:14-2b, because he committed an act of sexual contact with a victim who was less than 13 years of age while he was at least four years older.  The indictment did not specify defendant's age or age disparity expressly, but defendant was indicted, and there was no challenge to the indictment or, therefore, to his status as an adult.  *See N.J.S.A.* 2C:4-11.  We do not believe, in these circumstances where the victim's age was noted in the indictment, that defendant's age or age disparity (the basis for making "sexual contact" a second degree crime) had to be alleged in the indictment.  This is particularly true because the first count specifically refers to *N.J.S.A.* 2C:14-2b.  There was

---

[1]By rejecting defendant's second contention, we do not indicate agreement or disagreement with *State v. Whitehead,* 203 *N.J.Super.* 509 (App.Div.1985). While defendant did not testify in this case, the State does not contend in this matter that the *Sands* issue cannot be asserted on appeal.  *See State v. Sands,* 76 *N.J.* 127 (1978).

no motion to dismiss the indictment and no direct facial attack addressed to the indictment on this appeal.

"Sexual contact" is defined in *N.J.S.A.* 2C:14–1d and "means an intentional touching by the victim or actor, either directly or through clothing, of the victim's or actor's intimate parts for the purpose of degrading or humiliating the victim or sexually arousing or sexually gratifying the actor. . . ." *N.J.S.A.* 2C:14–1e defines "intimate parts" as "the following body parts: sexual organs, genital area, anal area, inner thigh, groin, buttock or breast of a person." The State's principal witness, Abbregail Pope, testified that she observed the contact and noticed defendant rubbing the victim's inner thigh. The testimony of the eyewitness included the following:

Q  What did you see initially as you initially watched?

A  As I looked out the window I saw M.C. He was feeling Coletia's legs and she was—

Q  What portion of her legs was he feeling?

A  Down by her thighs.

Q  Was he using one hand or two hands?

A  Two hands.

Q  How was he feeling her thighs?

A  He was rubbing them like this.

Q  Could you see whether or not he was speaking with her?

THE COURT: I'm sorry. Would you just indicate—He was rubbing them like what?

THE WITNESS: You can't see me.

Q  Would you stand up and demonstrate how he was rubbing them.

A  He had his hands on her legs doing like this.

THE COURT: The witness indicates he was rubbing the portion of her leg known as the thigh.

How was Coletia reacting physically as far as you could see?

A  She was very fidgety, like she was nervous or scared.

     \*      \*      \*      \*      \*      \*      \*      \*

Q  Did you see him do anything else?

A  Yes.

Q  What did you see?

A  As I continued to look out the window he kept rubbing her thighs and then I saw him pull her pants to the side and put his finger in her vagina.

     \*      \*      \*      \*      \*      \*      \*      \*

Q   When he pulled it aside do you recall which finger you indicate he inserted?

A   No.  I don't know which finger it was, which hand it was.

Q   When he pulled her pants aside what could you see?

A   I could see her vagina area.

Q   Was there anything obstructing your view of seeing her vagina area?

A   Nothing.

Q   Did you see him insert his finger?

A   Yes, I did.

Q   At the moment he inserted his finger how did Coletia react physically?

A   Afraid.  She was like twitching.

Q   When he was rubbing her thighs would you just stand up again and indicate, was it strictly on her thighs?

A   No, it was in like this.

Q   Would you just indicate—I don't mean to embarrass you.  For the record what portion of her body?

A   Down near her vagina.

Q   Was that when she was wearing her shorts?

A   Yes.

Q   When you saw him insert his finger approximately how many feet were you from that car?

A   About six.

Q   Is there any question in your mind that you saw him do that?

A   No.  I saw it.

Q   When you saw him insert his finger did you see how far it went in?

A   No.[2]

In charging the jury, the trial court advised that defendant could be found guilty if the jury was convinced beyond a reasonable doubt that the defendant had "sexual contact" with the victim's "intimate parts."  The relevant terms were defined. The difficulty, of course, flows from the fact that the defendant was not indicted for having contact with "intimate parts" generally, nor for touching the "inner thigh," although the jury was instructed that defendant could be convicted for touching an "intimate part," including the "inner thigh."  Defendant was indicted only for "intentionally touching the vagina and genital

---

[2]The jury acquitted defendant on the second count alleging aggravated sexual assault which required a showing of "penetration."  *See N.J.S.A.* 2C:14-2a(1).  We reject the suggestion in the State's brief that the conviction on the first count can be sustained because of the testimony concerning the vagina without consideration of the issue concerning "inner thighs."

area...." The "genital area" is expressly included in the definition of "intimate part," *N.J.S.A.* 2C:14–1e, and, although not expressly specified in the definition, the vagina is clearly an "intimate part" of the body.

We are satisfied, under the totality of the circumstances, that defendant's conviction should not be reversed under the plain error doctrine. We stress that there was no objection to inclusion of reference to the "inner thighs" in the charge. Nor did the defendant assert lack of notice or specific prejudice by consideration of that subject. Moreover, the first count of the indictment referred to the appropriate subsection of the Code of Criminal Justice, *N.J.S.A.* 2C:14–2b, which makes it a crime of sexual assault if the actor, at least four years older than the victim, commits an act of sexual contact with a victim less than 13 years of age.[3] We are convinced that, under the circumstances where the indictment referred to specific "intimate parts" (the "vagina and genital area") and the proofs included another "intimate part" within the same zone of privacy, there is no lack of indictment or notice warranting reversal or a new trial. *See* and compare *e.g., State v. Talley,* 94 *N.J.* 385, 392–394 (1983); *State v. Wein,* 80 *N.J.* 491, 497 (1979); *State v. Campisi,* 23 *N.J.* 513 (1957); *State v. Passafiume,* 184 *N.J.Super.* 447 (App.Div.1982), certif. den. 91 *N.J.* 280 (1982); *State v. Wolden,* 153 *N.J.Super.* 57 (App.Div.1977); *State v. Holder,* 137 *N.J.Super.* 300 (App.Div.1975), certif. den. 69 *N.J.* 443 (1976); *R.* 3:7–4.

The judgment of conviction and sentence imposed are affirmed.

---

[3] We can find no evidence in the record of any motion to dismiss the indictment for evidentiary insufficiency or otherwise. The grand jury minutes are not contained in this record, and we do not know if the evidence before the grand jury included direct testimony from Ms. Pope or reference to "inner thighs."